UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 15-3120(DSD/BRT)

Dominic Shammami,

        Plaintiff,

v.                                        **ORDER**

MetroPCS Michigan, LLC,
PAPV, Inc., d/b/a, Diamond
Communications Two,
and Mr. Paul Kanouno,

        Defendants.

    Lee Moua, Esq., Hmong MN Professional Bldg., 225 University Avenue West, Suite 121B, St. Paul, MN 55103, counsel for plaintiff.

    Jeff Bone, Esq. and Corr Cronin Michelson Bumgardner Fogg & Moore LLP, 1001 Fourth Avenue, Suite 3900, Seattle, WA 98154, Daniel R. Hall, Esq. and Anthony Ostlund Baer & Louwagie PA, 90 South 7th Street, Suite 3600, Minneapolis, MN 55402 and Nathan R. Sellers, Esq., and Fabyanske Westra Hart & Thompson, PA, 333 South Seventh Street, Suite 2600, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court upon the motions to compel arbitration and to dismiss by defendants MetroPCS Michigan, LLC, PAPV, Inc., and Paul Kanouno. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motions.

**BACKGROUND**

This business dispute arises from plaintiff Dominic Shammami's agreements with PAPV. MetroPCS is a wireless communications service provider. PAPV is a MetroPCS dealer, and Kanouno is

president of PAPV. Shammami is an individual who owns four MetroPCS stores in the twin cities area.

In 2014, MetroPCS and PAPV entered into a Master Dealer Agreement, under which PAPV became a dealer for MetroPCS equipment and services. Kanouno Decl. Ex. 1, at 1, § 2.1. MetroPCS and PAPV also executed a Master Dealer Addendum, which authorizes PAPV to contract with third parties - referred to as subdealers - to operate MetroPCS retail locations. See id. § 2.2; see also Kanouno Decl. Ex. 2 § 1.2. The Master Dealer Addendum is expressly incorporated into the Master Dealer Agreement. Kanouno Decl. Ex. 2, at 1.

On January 27, 2015,[1] Shammami and PAPV executed four separate but identical, "Exclusive Subdealer's Agreement[s] to Comply with Dealer Agreement" governing the operation of Shammami's MetroPCS stores (Subdealer Agreements). Kanouno Decl. Exs. 3-6. Among other things, the Subdealer Agreements expressly provide that Shammami "shall comply with all terms and conditions of the Dealer Agreement." Id. § 1. Shammami acknowledged that he "read and understood the contents of the Dealer Agreement." Id. § 8. Relevant here, the Master Dealer Agreement provides:

---

[1] The Subdealer Agreements include a handwritten date of January 27, 2014, but the parties agree that they actually signed the documents on January 27, 2015. See Kanouno Reply Decl. ¶ 12; Shammami Decl. ¶ 11.

2

> With the exception of claims concerning payment of invoices, [trademarks and the like], or arising out of Section 11 herein, any disputed claim or other such dispute arising out of or related to this Agreement, or any previous or other agreement between the parties, or otherwise from the relationship of the parties, which cannot be resolved by subsection 19.1 above, will be settled by binding arbitration.

Kanouno Decl. Ex. 1 § 19.2. The parties also agreed that any arbitration would be conducted in Seattle, Washington, pursuant to the rules of the American Arbitration Association (AAA). Id. § 19.3.

On May 20, 2015, Shammami filed an amended complaint in Ramsey County District Court against MetroPCS, PAPV, and Kanouno, alleging breach of contract, unjust enrichment, and misrepresentation. ECF No. 1-1. The gist of Shammami's complaint is that the Subdealer Agreements are invalid and unenforceable because they conflict with defendants' prior oral promises to him and he was coerced into signing them. Defendants timely removed the case to this court and now move to compel arbitration and for dismissal.

## DISCUSSION

Congress enacted the Federal Arbitration Act (FAA) to counteract "longstanding judicial hostility to arbitration agreements" by "plac[ing] arbitration agreements upon the same footing as other contracts." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). The role of the court is limited

to determining the existence and scope of an agreement to arbitrate. Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 680 (8th Cir. 2001). Whether a valid agreement to arbitrate formed is a question of contract. Keymer v. Mgmt. Recruiters Int'l, Inc., 169 F.3d 501, 504 (8th Cir. 1999). If a court finds that the parties agreed to arbitrate a dispute, it must order the parties to arbitrate. 9 U.S.C. § 4.

Defendants argue that this dispute falls squarely within the scope of the arbitration clause in the Master Dealer Agreement, which applies to Shammami through the Subdealer Agreements. Shammami does not dispute that the arbitration provision is broad enough to include his claims. Rather, Shammami contends that the arbitration clause is unenforceable against him because he (1) did not sign the Master Dealer Agreement, (2) did not otherwise agree to arbitration, and (3) he was coerced into signing the Subdealer Agreements. In other words, Shammami challenges the validity of the Subdealer Agreements and, by extension the enforceability of the Master Dealer Agreement's arbitration provision.

The law is clear that the arbitrator, rather than the court, decides whether a contract "as a whole" is valid. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006); see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967) (holding that the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract

4

generally."); Houlihan v. Offerman & Co., 31 F.3d 692, 695 (8th Cir. 1994) ("[A] claim of fraud in the inducement of the contract generally, because it does not go to the 'making and performance of the agreement to arbitrate,' is properly left to arbitration.") (internal quotations and citation omitted).[2] In contrast, "if the claim is fraud in the inducement of the arbitration clause itself - an issue which goes to the making of the agreement to arbitrate - the federal court may proceed to adjudicate it." Prima Paint Corp., 388 U.S. at 403-04.

Here, Shammami challenges the validity of the Subdealer Agreements, which incorporate the Master Dealer Agreement, by claiming that he was coerced into signing them.[3] Under a plain reading of Buckeye and Prima Paint, that issue must be decided by the arbitrator, because Shammami is attacking the contracts as a whole, rather that merely the Master Dealer Agreement's arbitration provision. As a result, the court must compel arbitration, and because "the entire controversy between the parties will be

---

[2] AAA rules follow suit: "The arbitrator shall have the power to rule on his or her own jurisdiction ... [and] to determine the existence or validity of a contract of which the arbitration clause forms a part." AAA Commercial Rule R-7.

[3] "[A] claim of coercion can void a contract under Minnesota law only when the free will of one of the parties has been destroyed by physical force or unlawful threats." Conway v. C.R. Bard, Inc., 76 F. Supp. 3d 826, 832 (D. Minn. 2015) (citing Bond v. Charlson, 374 N.W.2d 423, 428 (Minn. 1985)). The arbitrator, and not the court, will decide whether that standard is met in this case.

5

resolved by arbitration[,]" the court also dismisses this matter. Green v. SuperShuttle Int'l, Inc., 653 F.3d 766, 770 (8th Cir. 2011). The court will do so without prejudice, however, in the event the arbitrator concludes that the Subdealer Agreements are invalid or unenforceable.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that

1. The motions to compel arbitration and to dismiss [ECF Nos. 15, 19] are granted; and

2. The case is dismissed without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  November 10, 2015

                                          s/David S. Doty
                                          David S. Doty, Judge
                                          United States District Court